Thank you and good morning. My name is George Ferides. I'm appearing on behalf of the petitioner, Belwinder Kaur. This is a petition for review of the Board of Immigration Appeals' decision, which affirmed without opinion the immigration judge's decision, which is therefore the final agency determination in this case. We review the immigration judge's decision for substantial evidence. The sole and threshold issue in this case is credibility. An adverse credibility finding must be supported by specific and cogent reasons and cannot be based on mere speculation, conjecture or unfounded assumptions. In the present case, the first issue I'd like to bring forward to the Court is the mischaracterization of petitioner's testimony on several key points, the most significant being which is seen on page 86 of the administrative record. Petitioner testified on direct that the police falsely accused her brother of militant activity and of committing several crimes. She stated unequivocally that her brother was not a militant, and despite that fact, the immigration judge in his decision on page 40 states that petitioner testified that her brother may or may not have been a militant. However, she also clarified her testimony again on page 136 on cross in the administrative record, saying where the government's attorney asked her if she had previously testified, if she had previously testified that her brother was a militant, and she said, and she stated that no, let me see the exact language, that they said that they only suspected his brother of militant activity, but that she stated once again that he had not done anything wrong. And yet despite her consistent testimony on direct and cross, the immigration judge still maintained that petitioner had testified that her brother may or may not have been a militant or that she didn't know, despite the fact that she did state over and over that her brother was not a militant and he was merely falsely accused of militant activity. In this case, she established persecution based on imputed political opinion, based on her brother's activities on behalf of the All-India Sikh Student Federation. And another mischaracterization of petitioner's testimony on less key points, they're still seen throughout the administrative record upon close examination of it, including the wounds she suffered during the persecution she suffered at the hands of the Indian police and what time of the day she was arrested. Granted, the immigration judge did not rely on these issues for his adverse credibility finding, but it does show the immigration judge's tendency to mischaracterize the petitioner's testimony, despite her consistent testimony both on direct and cross. In fact, in this case, in the outset, there was apparently a tape malfunction and the immigration judge proceeded to summarize the testimony that had been given up to that point. And the trial attorney for the petitioner did point out to the judge several problems she had with his summary, and yet though he took note of that, he still ruled in his decision according to how he had summarized the case, despite the fact that the petitioner did clarify on cross and throughout her testimony on those issues. Wasn't there quite a bit of confusion, really, in her testimony when you look at it in Groves and her conduct? Just take up the passport, for example. The passport, Your Honor? Yeah. The fact that she – She had a passport, didn't she? She had a passport, but she did not – She didn't use it, right? Her valid passport she did not travel on. She used a passport that was given to her by her agent to travel on to Canada and then to the United States, I believe. And then when she came to the United States, she requested from the – I believe the Indian consulate here in America for her valid passport, which she had lost apparently in India, to verify her identity for that purpose. So I don't – the judge does say that the fact that she traveled on a different passport to come to the United States, I think he referred to it as having an aura of fabrication. But when – in these types of cases, when – She applied to the Immigration Service coming across the border, didn't she? Your Honor? She presented a false document to enter the United States, a very deliberate act. Yes, Your Honor. She was fleeing persecution. And in these types of cases, it's very common that individuals who flee persecution would use a false document to leave their country. And so – She was being consistent about it, and she entered the United States, told the Immigration Service she was persecuted in India, and she was coming into the United States, and she wanted a way of deportation, but she wanted an opportunity to – Yes, Your Honor. That's very rational. But when an individual is fleeing persecution, they just want to get out of India. They just want to be somewhere safe. She was being led by an agent who pretty much prepared all her arrangements for fleeing India and brought her all the way to the United States. She relied on his advice and his ability to help her out of India. And moreover, when the immigration judge questions the way she entered the United States, he's questioning an aspect of her testimony that has nothing to do with the core of her claim, which is undisputed on the record. We also get involved with, as India would see it, subversive membership, right? Excuse me, Your Honor? She's a member of an organization, or she claims to be. No, it's her brother who has the political affiliation. And asked the principles of the organization or the philosophy of the organization, she doesn't know anything about it. No, Your Honor. She's asserting imputed political opinion in this case. It's not her political opinion, per se, that forms the basis of her claim. It's the fact that her brother was a member of the All-India Sikh Student Federation, and the Indian police persecuted her because of her relationship with him. They were looking for him, and they – Because of his political views or because she wouldn't tell him or what? Well, they were pursuing him because of his political views. And then they persecuted her because they felt that she had knowledge of his whereabouts. And they also associated her with his political views because of her relationship to her brother. And, in fact, both she and her father were arrested based on that premise. Is it permissible for the IJ to hold it against her under these circumstances that she doesn't seem to know much about the political beliefs that are being imputed to her? I think her political opinion is immaterial in this case, Your Honor. I don't know. I'm not talking about her political opinion. I'm talking about her political knowledge. Oh, her political knowledge. Yeah. Well, she does seem to be confused a little bit about certain events in India, but I don't think that has any bearing on her case, Your Honor, because she is not asserting a claim based on her affiliation, in which case her knowledge of political events and of political activities would be pertinent. And here, in this case, she's simply testifying that the police threatened her with future arrest if she could not locate her brother. And by doing so, it's also implied that they're persecuting her based on her political opinion of what they impute to her. I do have some other key points, but I would like to defer. Why don't you save it for rebuttal and hear what the government has to say. Okay. Thank you. Good morning, Your Honors, Counsel. My name is Margaret K. Taylor. I represent the government in this matter. In order to be deemed eligible for the relief of asylum and withholding of removal, an applicant must persuade the fact finder that she's telling a credible story. Ms. Cower's story was riddled with inconsistencies, with contradictions and implausibilities, and therefore the immigration judge's conclusion that she failed to tell a credible story is supported by substantial evidence. We're only concerned about the inconsistencies that have to do with her claim of fear of future persecution. Isn't that true? That's correct, Your Honor. Immaterial inconsistencies are something we can't consider and IJ shouldn't. Well, immaterial consistencies, of course, immaterial is a broad term. But the judge, the immigration judge, is permitted to consider all of her testimony in the aggregate and then apply it to those factors which speak to her well-founded fear. Let me give you an example. She testified that she was beaten with a stick at the police station. Yes. And she testified she did not go to a medical doctor, that she went to someone who gave her some ointment or something. Healer, right. Yes. And the immigration judge found that to be incredible. I think you may have found it to be implausible. Well, I'm reading the quote. All right. Well, then it's incredible. He used the word incredible. All right. I'm having trouble figuring out what's incredible about someone who is bruised and gets a treatment with ointment and doesn't go to a doctor, doesn't get an x-ray, because they don't feel that it's necessary. Well, I think in the context of this record, what the immigration judge may have been thinking is, first of all, she testified to very brutal beating, a four-inch long stick, two-inch thick. And she also had requested medical documents concerning her brother, who did go to a medical doctor, and there was a hospital only a mile and a half out of her town. That seems to me to be a non sequitur. We're talking about her injuries and the treatment she received, not his. Well, but the way that the immigration judge phrased that was that in light of all these other factors, it was incredible to him that she would have only gone to a healer, where she's really claiming persecution on the basis of the severity of this beating, and then in the same breath says that the beating wasn't that bad, that they were just bruises and all she needed was to go to a healer. So in that context, the immigration judge... She minimized her injuries and he maximized them, and therefore she should have gotten medical treatment. She both maximized and minimized her injuries, and that's where the incredibility is, because she was saying that because of the severity of her beating, she was persecuted in the past and merits asylum. And then in the same breath said, well, but those injuries weren't so bad. So that's the inconsistency. Some of the other inconsistencies and contradictions were that, as counsel said, the story of the brother and Ms. Bellwinder-Cower are inextricably linked in this case. So the brother supposedly was arrested in December of 94, and disappeared never to be heard from again in January of 95. Yet Ms. Bellwinder-Cower introduced into evidence a medical report concerning her brother from 1997, even though she testified that neither she nor her family had ever heard from him again. And, of course, it's impossible to have a medical record from someone that you have no idea where they are. Can't you contact the doctor? How would she know? She claims not even to know which country he's in, so I don't see how she could contact the doctor. He was treated in India. Is that true? He was treated, as far as she knows, in 1994. Where? In India. My question was, you said there would be no way without contacting the brother that she could see the medical records or have them sent to her. The medical records were generated in 1998, but they were pertinent to medical treatment received in 1997. And my question to you was, couldn't she have obtained those records through the doctor or the hospital? Well, where is the brother? We don't know where he is. She says he's never been heard from. The judge was concerned. The judge concluded since she says she never talked to the brother, how could she get the medical records? And I'm asking you, isn't there a way to do that? Your Honor, I think in the context of the case, the answer is no. The brother was close to his family, and he vanished. Certainly if he'd gotten medical treatment in their community in 1997, they would have known his whereabouts. Did the immigration judge give her an opportunity to explain how she got the medical records? Yes, it was discussed at great length. In fact, let's see if I have a record reference for you on that. A record reference would be at 208 through 212, and again at 220. Another critical inconsistency in Ms. Khara's testimony was that she stated that her brother had been arrested the last time in December of 1994, and the reason for his arrest was his involvement in the assassination of the Punjab chief minister, Bayant Singh. And she was, and then later when she was confronted with the information that Punjab chief minister Bayant Singh was assassinated eight months after his arrest on August 31st, 1995, she suddenly changed her testimony, saying, no, no, maybe that's not the reason for the brother's arrest. So again, that's a critical inconsistency in the record that the immigration judge relied on. What are we to make of the mischaracterization by the IJ of her testimony as to whether or not her brother was a militant? Well, Your Honor, actually, when that came up, I'm not sure that it was a mischaracterization, because on AR-40, what the immigration judge said is the respondent indicated that he may have been a militant. So that is, I mean, there was some question as to whether he was a militant or wasn't. He didn't say definitely she had said he was a militant. Well, but in fact, the testimony to which our attention was directed, she said specifically he was not. She did say, she wasn't very clear about her brother's involvement in the A.I. assassination. The testimony to which we were directed was very clear. She said he was not, unless you can point me to some other testimony where she said something different. Well, Your Honor, her testimony about her brother was fairly vague. It talked about that he was involved in some bad things, that he may have been a criminal, that he may have been a member of the A.I. SSF, and in that mix, militant came up also. So I'm not sure that the immigration judge can be pinned to a mischaracterization here where her testimony was all over the place in terms of exactly what her brother was involved in and why he was arrested six times by the police. Okay. Well, in closing, this record is flawed in many critical respects. The story of Ms. Cower and Ms. Cower's brother are inextricably connected, and the inconsistencies that she tells both about her brother and about her own experiences provided substantial evidence for the immigration judge to find that she did not testify credibly. The standard of review on credibility findings is substantial evidence. A different result is not compelled, so we urge the court to find that the immigration judge to uphold the immigration judge's decision. Thank you very much.  And you've saved some time for rebuttal. Thank you. Petitioner argues that a close examination of this record will show that the immigration judge cited inconsistencies in the record that simply do not exist. With reference to her brother, she testified that he was arrested six times and that he had suffered severe beatings and was hospitalized on several occasions. She said that the last time she saw her brother was on January 25, 1995. The immigration judge said that it's listed in her declaration that they told the police that he was running out of the house when the police came to look for him. But she testified consistently on direct and cross-examination that he disappeared from the hospital on January 25, 1995. This is not inconsistent with her declaration, as you can see on page 520 of the administrative record. The third paragraph states the last time they heard of him was when he left the hospital, and in the next paragraph it says that they told the police that he was running out of the house when he thought he was going to be arrested and tortured. So it's clearly in this situation what the reality is and what they told the police is clearly delineated by her testimony, which is she testified that the reality was that he had run out of the hospital, whereas they told the police simply that he had run out of the house. What do we make of the medical report from 1997? Now, Judge Alicorn's question was, well, couldn't they have talked to the doctor or the hospital, even though they didn't know where the brother was? Was it the same treating doctor or same treating hospital, so they just go back to where he's been treated before? Or was it some other hospital? And if it's some other hospital, I mean, of all the hospitals in India, how do they know to ask that one? I mean, there's a puzzle in there for me. If you don't know where the brother is, how do you find out records for a period of medical treatment for the brother? I mean, how do they know where to ask? I don't know, Your Honor. I don't recollect from what hospital the document would have come from. What we do know from the records is that she testified over and over and over again that she doesn't know where her brother is, and she wasn't aware that her father did. Now, if her father simply didn't tell her, that calls for speculation. Because that record she sent back for, I mean, she herself did not obtain it. The father obtained the record and sent it to her. She simply requested documents, and that's what he submitted. To her credit, she submitted all the documentation she gathered, whether or not it helped or, in this case, hurt her case. Okay. And moreover, in closing, I just want to reiterate that in this situation, there's a threat of future persecution, which goes beyond the beatings and the molestation that she suffered at the hands of the police. The fact that she did not obtain treatment is simply due to the fact that she didn't think she required it, as pointed out by the court, and that she testified consistently on direct end, cross, and with her declaration regarding the core of her asylum claim, which establishes persecution based on imputed political opinion. Okay. Thank you very much. The case of Balwinder Kaur is now submitted for decision, and we'll go back to the ordinary order in the calendar. And you're free then. You've got a case somewhere else? Okay. That's why we moved you to the top of the calendar. I'm not sure I can pronounce this name properly. John Kuo versus Ashcroft is the beginning.
judges: Alarcon, Beezer, W. Fletcher